IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PATRICIA L. JAMES                                                    PLAINTIFF

v.                                          CIVIL ACTION NO.  3:14-cv-799-WHB-JCG

COMMISSIONER OF SOCIAL SECURITY                                      DEFENDANT

### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), the claimant Patricia L. James seeks judicial review of the decision of the Commissioner of the Social Security Administration, which in part denied her Title II application for a period of disability and disability insurance benefits. Plaintiff alleged an onset of disability, beginning September 12, 2011, but the Administrative Law Judge (ALJ) concluded that Plaintiff became disabled on January 1, 2014. Because the ALJ's decision is supported by substantial evidence and in accord with relevant legal standards, the undersigned United States Magistrate Judge recommends that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 20) be granted.

### I.  BACKGROUND

Plaintiff alleges disability due to obesity, diabetes mellitus, vision impairment, and depression with anxiety. (ECF No. 19, at 4). She was 52 years old on her alleged disability onset date of September 12, 2011. (ECF No. 17, at 67). Plaintiff has a high school education and past relevant work as a school cook and shirt bundler. *Id.* at 25.

The ALJ found that Plaintiff's obesity, diabetes mellitus, and depression with

anxiety were severe impairments, but that Plaintiff, from September 12, 2011, until January 1, 2014, had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except for the following:

> requires the option to stand and move about briefly (i.e., no more than five minutes) after sitting for forty-five minutes, and to sit briefly after standing or walking for forty-five minutes; she can frequently but not constantly use her hands to perform fine or gross manipulations, and is limited to performing only simple, routine tasks requiring only occasional interaction with the public or coworkers.

*Id.* at 20.

The ALJ concluded that Plaintiff was unable to perform her past relevant work as a school cook or shirt bundler, jobs requiring medium exertional demand. *Id.* at 25. The ALJ found, however, that Plaintiff, prior to January 1, 2014, was capable of making a successful adjustment to a limited range of light work that existed in significant numbers in the national economy. *Id.* at 26. The representative jobs offered by the vocational expert were laundry folder, bench assembler, and small parts assembler. *Id.*

The Appeals Council denied Plaintiff's request for review on July 18, 2014, thereby rendering the ALJ's decision the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff timely commenced the present action by Complaint filed October 15, 2014. The Commissioner filed the instant Motion to Affirm the Commissioner's Decision on October 22, 2015.

II.  DISCUSSION

A.  Judicial Review

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence on the record as a whole to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994). "'[S]ubstantial evidence' is less than a preponderance but more than a scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales,* 402 U.S. at 401 (quoting *Consol. Edison v. NLRB,* 305 U.S. 197, 229 (1938)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988)(quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to resolve. If the Commissioner's factual findings are supported by substantial evidence, they are conclusive and must be affirmed. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against the [Commissioner's] decision. *Bowling,* 36 F.3d at 434.

B.  Standard for Entitlement to Social Security Benefits

The standard for entitlement to Social Security benefits has been summarized by the United States Court of Appeals for the Fifth Circuit as follows:

> The claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572(a) and (b). The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.
>
> The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. Thus, the claimant must show first that she is no longer capable of performing her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

*Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000).

C.  Analysis of Plaintiff's Alleged Errors

    1.  Substantial Evidence Supports the ALJ's Finding that Plaintiff's Vision Impairment was Not Severe

Plaintiff alleges that the ALJ erred in failing to find that Plaintiff's vision

4

impairment was severe. A "severe impairment" is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 CFR 404.1520(c).

The Fifth Circuit interpreted this standard in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985). Under *Stone,* "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone,* 752 F.2d at 1101. At the time of *Stone,* there was regular agency misinterpretation of the severity standard, resulting in the Fifth Circuit issuing an edict that in the future, if the administrative law judges did not cite to *Stone* or other cases of like effect, the federal court would assume that the wrong standard had been applied, subjecting the case to automatic reversal and remand. *Hunter v. Astrue,* No. 4:11-cv-8-WAP-DAS, 2012 WL 1066359, *5 (N.D. Miss. Feb. 2, 2012).

The ALJ cited *Stone* and applied the correct legal standard:

> Although the claimant may have some impaired vision, this disorder as treated or treatable constitutes only a slight abnormality having such a minimal effect on the claimant it would not be expected to interfere with her ability to work. This impairment is thus not 'severe' within the meaning of the Act. This finding is in accordance with *Stone v. Heckler,* 752 F.2d 1099.

(ECF No. 17, at 19).

The ALJ addressed the only medical evidence in the record concerning

Plaintiff's vision, a September 10, 2013, optometry record (ECF No. 17, at 493-94) and a September 20, 2013, ophthalmologist record (ECF No. 17, at 495-96). The optometry record of Dr. Alexandria Espy, O.D., shows Plaintiff's corrected visual acuity within normal limits. Dr. Espy referred Plaintiff to an ophthalmologist to determine whether Plaintiff had diabetic macular edema. The ophthalmologist, Dr. Joel H. Herring, found no evidence of macular edema and no evidence of subretinal fluid. Dr. Herring concluded:

> She has some diabetic changes, but main problem is cataract and PSC related. Patient understands condition, prognosis and need for follow up care. Advised to call immediately if eye pain or loss of vision. Moderate Nonproliferative Diabetic Retinopathy OU: Discussed the importance of blood sugar control in the prevention of ocular complications. Posterior Vitreous Detachment OU: Retinal detachment warnings given. Nuclear Sclerosis with PSC OS > OD; Cataract surgery recommended to better evaluate and manage retina.

*Id.* 495-96.

The ALJ was swayed by the fact that Plaintiff's vision impairment was treatable with cataract surgery, glasses, and controlling blood sugar. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling. If, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'" *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir. 1987)(citing *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir. 1986)). While Plaintiff maintained at the hearing that she could not afford glasses, the ALJ

found no evidence in the record that Plaintiff had "pursued programs which provide assistance with obtaining corrective lenses." (ECF No. 17, at 19).

The ALJ did not accept wholesale Plaintiff's testimony regarding her vision. Plaintiff testified that she could only read up close for fifteen or twenty minutes before her vision became blurry and eyes watered, and for thirty minutes when viewing distance. *Id.* at 72. The records of Drs. Espy and Herring do not corroborate the extent of restriction alleged by Plaintiff. It was within the ALJ's discretion to reject Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her condition where there was an absence of supporting objective medical findings. Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ applied the *Stone* standard, and her determination that Plaintiff's vision impairment was not severe, as treated or treatable, is supported.

2. <u>Substantial Evidence Supports ALJ's RFC Finding of Restricted Light Work</u>

Plaintiff challenges the ALJ's finding that Plaintiff retained the RFC to perform restricted light work, prior to January 1, 2014. Plaintiff contends that the sitting and standing limitations in the ALJ's RFC render Plaintiff only capable of sedentary work, and that due to Plaintiff's age, the ALJ was required to find Plaintiff disabled under Medical Vocational Guideline 201.12, as of the alleged onset date, September 12, 2011. (ECF No. 19, at 10-11).

The Medical Vocational Guidelines, or grids, are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability. 20 CFR §

404, Subpt. P, App. 2. "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Reed v. Sullivan,* 988 F.2d 812, 816 (8th Cir. 1993)(internal citations and quotations omitted); *see* SSR 83-11, 1983 WL 31252.

Social Security Ruling 83-12 addresses the grids and provides:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In cases of considerably greater restriction(s), the occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious.
>
> Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. The publications listed in sections 404.1566 and 416.966 of the regulations will be sufficient for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful. State agencies may use personnel termed vocational consultants or specialists, or they may purchase the services of vocational evaluation workshops. Vocational experts may testify for this purpose at the hearing and appeals levels. In this PPS, the term vocational specialist (VS) describes all vocational resource personnel.
>
> Adjudicative Guidance
> . . .

> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.

SSR 83-12, 1983 WL 31253.

The ALJ followed this adjudicative guidance. Plaintiff's exertional RFC did not coincide with the exertional criteria of sedentary or light work but fell in between. To determine the extent to which Plaintiff's restrictions eroded the unskilled light work occupational base, the ALJ relied on the testimony of a vocational expert who testified that a hypothetical individual of the same age, education, and work history as Plaintiff, with her limitations, could perform work as a laundry sorter, bench assembler, and small parts assembler (ECF No. 17 at 25-26, 86-93). The vocational expert's specialized knowledge of work requirements was not challenged by Plaintiff. The vocational expert's testimony constitutes substantial evidence that Plaintiff was able to perform certain unskilled restricted light work prior to January 1, 2014.

    3.    <u>The ALJ Acted Within Her Discretion in Weighing the Opinion of the Consultative Examiner</u>

Plaintiff was referred by Disability Determination Services for a comprehensive mental status examination. *Id.* at 391-394. On November 1, 2011, Plaintiff was interviewed by Dr. William S. Cook, Jr., M.D., a psychiatrist. Dr. Cook's report provides:

9

> The claimant's ability to perform routine, repetitive work work-related tasks, seems doubtful. Her ability to interact satisfactorily with others, including coworkers and supervisors, seems poor.

*Id.* at 393.

The ALJ considered Dr. Cook's opinion and opted not to assign it great weight, finding it "not consistent with the reports of improvement over the period (of less than twelve months) following the claimant's alleged onset date." *Id.* at 23. The ALJ detailed the evidence supporting a finding that Plaintiff had significantly improved since her September 2011 psychiatric hospitalization and November 2011 evaluation by Dr. Cook:

> On November 3, 2011, she saw the staff nurse practitioner who diagnosed major depressive disorder and bereavement; this nurse practitioner assigned a Global Assessment of Functioning score of 50, which indicated "serious" symptoms or impairment (17F). This is somewhat incongruous, however, with the claimant's report that she had been doing well since her September 2011 hospitalization and that Celexa was helping with her symptoms (17F). In January 2012, claimant reported she felt much better (17F). In March of 2012, claimant reported she felt well "psychiatrically," and as of June of 2012, the claimant stated she felt well with only "slight" depression and worrying and only one short crying spell the previous week (17F). She did report she did not do well with crowds, and preferred to be alone. Although the noted Global Assessment of Functioning score remained at 50, this is inconsistent with reported improvement (Exhibit 17F).
>
> The claimant continued to follow at Weems with occasional counseling and medication clinic visits. In November of 2012, she denied problems or side effects; she stated she was sleeping well, and she denied depression or crying spells (17F). In April and June of 2013, she again stated she was doing well overall (17F). As of August 1, 2013, she again

> stated she was doing well overall (17F). As of August 1, 2013, she was described as alert and oriented in all spheres, with grooming and hygiene within normal limits (17F). Her attitude was very calm and cooperative, with no psychomotor hyperactivity or retardation noted; thought process within normal limits, with logical and organized content, and exhibiting no positive signs of psychosis or major affective disruption (22F).

*Id.* at 22.

The ALJ accounted in the RFC for the areas of difficulty noted by Dr. Cook, limiting Plaintiff to "performing only simple, routine tasks requiring only occasional interaction with the public or coworkers." *Id.* at 20. However, the ALJ had Plaintiff's most recent mental health records, which contained sufficient evidence upon which the ALJ could conclude that Plaintiff's mental health had improved with counseling and medication since 2011. The ALJ's conclusion that Plaintiff's depression and anxiety were not disabling for a continuous period of at least twelve months, is supported by substantial evidence. *See* 42 U.S.C. 423(d)(1)(A) (stating a "disability" must "be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").

### 4. The ALJ Acted Within Her Discretion in Weighing the Opinions of Drs. Guest and Methvin

Plaintiff next argues that the ALJ engaged in "playing doctor" when she gave little weight to the opinions of Drs. Guest and Methvin (ECF No. 19 at 13-15). These doctors addressed Plaintiff's ability to lift over ten pounds and perform strenuous activity. In a one-page insurance form dated September 2, 2011, Daryl P. Guest, M.D., found that, from the period of June 24, 2011, to September 4, 2011,

11

Plaintiff could not lift over ten pounds or perform strenuous activity because of a postoperative infection; Plaintiff had developed an abscess around abdominal stitches (ECF No. 17 at 351). Dr. Guest found that Plaintiff could return to work on September 5, 2011. *Id.* at 351).

In a one-page insurance form faxed on October 12, 2011, James Travis Methvin, D.O., found that, from September 5, 2011, until October 24, 2011, Plaintiff could not lift over ten pounds or perform strenuous activity due to aspiration of an abdominal mass. *Id.* at 390. Dr. Methvin released Plaintiff to return to work on October 25, 2011.

Drs. Guest and Methvin opined regarding temporary restrictions. Both of these doctors were of the view that Plaintiff could return to work on October 25, 2011, at the latest. The opinions of Drs. Guest and Methvin do not support Plaintiff's position that she was disabled from September 11, 2011, until January 1, 2014. Instead, the opinions of Drs. Guest and Methvin support the ALJ's conclusion that Plaintiff's abdominal mass "would generally not be expected to produce work-related limitations for the twelve-month durational requirement of the Act." *Id.* at 23.

     5.    <u>The ALJ Properly Considered the Opinions of Treating Nurse Practioners</u>

Plaintiff maintains that the ALJ gave absolutely no weight to the reports of two nurse practitioners. On February 8, 2012, nurse practitioner Charlie Hardin wrote a "to whom it may concern" letter on behalf of Plaintiff. (ECF No. 17, at 435).

In the letter, Mr. Hardin stated that Plaintiff had insulin-dependent diabetes, neuropathy in her hands and feet, severe depression, and degenerative joint disease. *Id.* Mr. Hardin went on to state that he believed "[Plaintiff] is not able to have gainful employment." *Id.* On November 25, 2013, Mr. Hardin completed a form in which he essentially opined that Plaintiff was so greatly limited that she was disabled. *Id.* at 557-561. Mr. Hardin opined that Plaintiff could only sit, stand, and/or walk about four hours in an eight-hour day and would be absent from work about two days per month. *Id.* at 559, 561.

The ALJ considered a November 19, 2013, "Mental Impairment Questionnaire" completed by nurse practitioner Traci Gibbs. *Id.* at 24, 549-555. Ms. Gibbs was of the view that Plaintiff had no restrictions of activities of daily living; slight difficulties in maintaining social functioning; and slight deficiencies of concentration, persistence, and pace; but one to two episodes of decompensation. *Id.* at 550-551. Ms. Gibbs concluded that Plaintiff's disorder would not cause more than a minimal limitation in her ability to perform basic work activity but that she would miss work about three times a month. *Id.* at 551-552.

It is clear that the ALJ considered the nurse practitioners' opinions because nearly a whole page of the ALJ's decision summarizes and discusses those opinions. *Id.* at 24. Plaintiff urges that the ALJ did not adequately explain the weight given to the nurse practitioners' opinions, but, in addition to finding the reported restrictions in Mr. Hardin's assessment excessive when compared to the objective

13

medical evidence, examination findings, and history of conservative treatment, the ALJ also explained that Ms. Gibbs' report was internally inconsistent, and there was no evidence to support her conclusion that Plaintiff would miss three days a month of work. The ALJ did not accept Mr. Hardin's opinion that Plaintiff "is not able to have gainful employment," as that is a determination reserved for the Commissioner. *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). Further, Mr. Hardin was not qualified to opine regarding whether there were a significant number of jobs available in the national economy for a person similar to Plaintiff.

> 6. <u>Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform the Jobs of Laundry Folder, Bench Assembler, and Small Parts Assembler</u>

At step five, the burden shifted to the Commissioner to establish that there were significant numbers of jobs that Plaintiff could perform considering her age, education, work experience, and RFC. Relying on the vocational expert's testimony, the ALJ determined that Plaintiff could perform the representative jobs of laundry folder, bench assembler, and small parts assembler. Once the ALJ met her burden, Plaintiff was required to prove that she could not perform this alternate work. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000).

According to Plaintiff, the vocational expert's opinion and the ALJ's conclusion that Plaintiff could perform the jobs of laundry folder, bench assembler, and small parts assembler are inconsistent with the Dictionary of Occupational Titles (DOT). Plaintiff submits that "none of these jobs allow a person to stand and move about briefly (no more than five minutes) after being seated for 45 minutes

and sit briefly after standing and walking for 45 minutes . . . . The Plaintiff would be restricted to sedentary work which rules out all three of these jobs." (ECF No. 19, at 20).

Here, the ALJ found restrictions that prevented Plaintiff from performing a full range of light work, so she solicited the assistance of a vocational expert. "[T]he DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey,* 230 F.3d at 145. "[T]he DOT job descriptions should not be given a role that is exclusive of the more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.*

The vocational expert explained that the DOT descriptions for the three jobs did not address sit and stand options but that he had knowledge regarding those options due to his years of experience in vocational matters, labor market surveys, and job analysis. (ECF No. 17, at 88). Plaintiff did not challenge the vocational expert's specialized knowledge of work requirements. The ALJ properly relied on the vocational expert's testimony, which constitutes substantial evidence in support of her decision that prior to January 1, 2014, Plaintiff could perform the occupations of laundry folder, bench assembler, and small parts assembler.

## III.  RECOMMENDATION

For the reasons stated, it is recommended that the Commissioner's Motion to Affirm (ECF No. 20) be granted and Plaintiff's appeal dismissed.

## IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 2nd day of August, 2016.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE